IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OCTAVIA T. SMITH,            :
                                    :
      Plaintiff,           :
                                      :
v.                              :        CIVIL ACTION FILE NO.
                                    :        1:06-CV-00373-LTW
JOANNE B. BARNHART,     :
Commissioner, Social Security  :
Administration,            :
                                    :
      Defendant.        :

## ORDER ON AN APPEAL FROM A
## SOCIAL SECURITY DISABILITY ACTION

Plaintiff is a thirty (30) year old female seeking Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI") under the Social Security Act ("the Act") alleging disability due to hearing voices, slow learner and headaches. Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), which denied Plaintiff's claim.

Plaintiff filed an application for disability insurance benefits on February 15, 2002. (Record [hereinafter "R."] at 14 ).  After that application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"), and a hearing was held on February 3, 2005.  Following the hearing the ALJ issued a decision on September 19, 2005, denying Plaintiff's claim on the grounds that she was not under a "disability" as defined by the Act.  (R. at 11-13).  On December 23, 2005, the Appeals Council of the Social Security Administration denied Plaintiff's Request for Review of the decision of the ALJ and made that decision the final decision of the Commissioner.  (R. at 6-8).  Plaintiff, having exhausted all administrative remedies, filed this action on February 6, 2006.  It is now before the undersigned upon the administrative record and the parties' pleadings and briefs and is ripe for review pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the undersigned **RECOMMENDS** that this matter be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION**.

## I.   STANDARD FOR DETERMINING DISABILITY

An individual is considered to be disabled for purposes of disability benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from

2

anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his or her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that he or she is unable to perform his or her former type of work. Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering claimant's age, education, work experience and impairment, there are some other types of jobs that exist in the national economy that the claimant can perform. The overall burden, however, rests upon the claimant to prove that he or she is unable to engage in any substantial gainful activity that exists in the national economy. Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

As summarized below, a five-step sequential analysis must be used when evaluating a disability claim.

(1)     The Commissioner must determine whether the applicant is currently working; if so, the claim is denied.

3

(2)    The Commissioner must determine whether the claimed impairment is severe; that is, whether the impairment or combination of impairments significantly limits the individual's physical or mental ability to do basic work activities; if not, the claim is denied.

(3)    The Commissioner must determine whether the impairment equals or exceeds in severity certain impairments described in the impairment listings in the regulations; if it does, the claimant is automatically entitled to disability benefits.

(4)    The Commissioner must determine whether the applicant has sufficient residual functional capacity to perform past work; if so, the claim is denied.

(5)    The Commissioner must determine, on the basis of claimant's age, education, work experience, and residual functional capacity, whether the applicant can perform any other gainful and substantial work within the economy; if so, the claim is denied.

See 20 C.F.R. §§ 404.1520 - 404.1576.

## II.    **FINDINGS OF THE ALJ**

The ALJ made the following findings of fact ("FOF"):

(1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

(2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)    The claimant's schizophrenia, affective disorder, organic mental disorder are considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4

(4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)    The undersigned find the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6)    The claimant has the following residual functional capacity: medium work in jobs that require occasional climbing of ropes, ladders and scaffolds, frequent climbing of stairs and ramps, frequent stooping, crouching, crawling, balancing and kneeling; the claimant is moderately limited in her ability to maintain attention and concentration for extended periods of time.

(7)    The claimant's past relevant work as cleaner did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

(8)    The claimant's medically determinable schizophrenia, affective disorder, organic mental disorder does not prevent the claimant from performing her past relevant work.

(9)    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(R. at 19-20).

## III.   <u>BACKGROUND FACTS</u>

Plaintiff was twenty-eight (28) years old when the decision was issued.  (R. at 94). Plaintiff has a ninth grade high school education, but she said her ability to read is poor and she does not comprehend what she reads very well.  (R. at 15-16, 286). Plaintiff has a history of drug and alcohol abuse.  (R. at 158, 185-218, 242 ).  Plaintiff has past work

5

experience  as a line server (cafeteria attendant) and cleaner.  (R. at 15, 287, 307).

Plaintiff alleges that she became disabled on July 10, 2001, due to hearing voices, being

a slow learner and headaches.  (R. at 15).  Plaintiff testified that when she hears voices

in her head they make her really nervous and shaky.  (R. at 287-89).  Plaintiff also

testified that she had been hearing voices for about five years and that she had been very

depressed before she started hearing voices.  (R. at 290).  Plaintiff's stepfather, James

Gilstrap, testified that he had been involved in Plaintiff's  upbringing since she was nine

years old.  (R. at 297).  Mr. Gilstrap testified that Plaintiff had been "wild" and

"suspicious," and it had been recommended that she be placed in "a special school"

when she was in grade school, but he had refused.  (R. at 297).  Mr. Gilstrap testified that

he has heard Plaintiff speaking to the voices she hears and that she has extreme mood

swings and inappropriate behavior.  (R. at 297-98).  Mr. Gilstrap also testified that

Plaintiff has used drugs, has disappeared for days, and has very low self-esteem.  (R. at

299-301).  Mr. Gilstrap testified that Plaintiff did not score well enough on testing to get

into a local trade school.  (R. at 301-02).

Records from the Fulton County Department of Mental Health, Mental

Retardation & Substance Abuse reveal that Plaintiff was seen on January 16, 2002.  (R.

at 112-13).  Dr. Gibson completed a Psychiatric Diagnostic Evaluation of Plaintiff to

6

assess Plaintiff's reported depression.  (R. at 112-13).  Plaintiff reported that she had

crying spells and auditory hallucinations.  (R. at 112).  Plaintiff's diagnostic impression

indicated that she had a depressive disorder, although major depression with psychotic

symptoms was ruled out, and that she had a history of marijuana use  and borderline

intellectual functioning.  (R. at 113).

On April 5, 2002, Plaintiff was seen by Dr. Frank V. Gordon for a psychological

evaluation.  (R. at 128).  Dr. Gordon is the consulting psychologist who examined

Plaintiff on behalf of the Government.  Plaintiff reported being depressed and unable to

keep a job.  (R. at 128).  At that time, Plaintiff indicated that she had started hearing

voices two or three months ago.  (R. at 128).  Plaintiff's sister, Schwanza Smith was also

present and told Dr. Gordon that Plaintiff "spaced out."  Ms. Smith also stated that, in

her opinion, Plaintiff has always been "a little off."  (R. at 128).  Ms. Smith further stated

that Plaintiff was strange as a child and in the last two years, Plaintiff's condition  had

worsened.  (R. at 128).  Ms. Smith told Dr. Gordon  that during the times when she had

allowed Plaintiff to stay in her house,  Plaintiff would suddenly "burst out laughing and

then a few minutes later she would start crying for no reason at all."  (R. at 128).  Ms.

Smith also stated that Ms. Smith's "kids don't even want to be around her (Plaintiff)

now because they say she sits and talks to herself and laughs for no reason."  (R. at 128).

AO 72A
(Rev.8/82)

At that time, Plaintiff's son lived with her and she would help get him ready for school.[1] (R. at 128). Plaintiff reported that she cleaned, cooked, did laundry and paid bills. (R. at 129). Dr. Gordon's prognosis was as follows:

> There is a psychological reason to believe that Ms. Smith cannot hold and keep a simple position in a stable work setting although this could change if she obtains treatment for her condition. She cannot deal appropriately with work stresses. Her ability to relate predictably in social situations (sic) impaired. Her ability to interact appropriately with supervisors, co-workers, and the public was impaired. Ability to function in a 40 hour week in a competitive environment is seriously limited and not an appropriate expectation. Her ability to adhere to a work schedule and meet production norms was impaired.

(R. at 132).

Similarly, on September 25, 2002, Plaintiff was seen by her treating physician, Dr. K. S. Reddy at the River Edge Behavioral Health Center ("River's Edge"). (R. at 171-72). Dr. Reddy prepared a Physician Psychiatric Comprehensive Exam form, detailing, among other things, Plaintiff's chief complaint, psychiatric history and diagnosis. (R. at 171-72). Dr. Reddy's diagnosis indicated that Plaintiff was suffering from ETOH dependence, cannabis dependence and schizoaffective disorder. (R. at 172). Plaintiff's global assessment of functioning score was 48 with 50 being the highest level

---

[1]Plaintiff's son was removed from her home after he was molested by Plaintiff's boyfriend. (R. at 18, 290).

of functioning over the past year.[2]  (R. at 172).  Dr. Reddy also diagnosed Plaintiff with chronic mental illness.  (R. at 172).

The ALJ also reviewed and relied on an opinion provided by a  non-examining state agency consultant, Dr. Paul Ginn.  (R. at 17, 248-261).  Dr. Ginn opined that Plaintiff had an organic mental disorder resulting in borderline intellectual functioning, symptoms of schizophrenia, and a substance abuse disorder, and that she was moderately limited in her ability to maintain social functioning and in her ability to maintain concentration, persistence or pace.  (R. at 17, 243).  The medical evidence has been summarized in the body of the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## IV.    CLAIMS OF ERROR

Plaintiff alleges that the decision of the Commissioner is in error for the reasons set forth below.

1.    The ALJ failed to properly weigh Dr. Gordon and Dr. Reddy's opinions.

2.    The ALJ failed to pose a complete hypothetical question to the VE.

---

[2]The Global Assessment of Functioning Scale is defined in the Diagnostic and Statistical Manual of Mental Disorders, American Psychiatric Association (4th Ed. 1994) (DSM-IV).  The range 41 to 50 is defined as "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." DSM-IV, 32.

3.    The ALJ failed to properly weigh lay witness testimony.

**V.    <u>SCOPE OF JUDICIAL REVIEW</u>**

The scope of judicial review of a denial of social security benefits by the Commissioner is limited.  This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  The only function of the Court is to determine whether there is substantial evidence in the record to support the findings and decision of the Commissioner and whether proper legal standards were applied in the fact-finding process.  The findings of the Commissioner are conclusive if supported by substantial evidence and if proper legal standards were applied.  <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987); <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1180 (11th Cir. 1986); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a verdict were the case before a jury.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); <u>Hillsman</u>, 804 F.2d at 1180; <u>Bloodsworth</u>, 703 F.2d at 1239.  "In determining

10

whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). In contrast, the Court's review of the ALJ's application of legal principles is plenary. Walker, 826 F.2d at 999.

## VI.    ANALYSIS OF CLAIMS OF ERROR

### A.    Whether the ALJ failed to properly weigh Dr. Gordon and Dr. Reddy's opinions.

Plaintiff contends that the ALJ placed greater weight on the opinions of non-examining physicians than on those of examining or treating sources. Specifically, Plaintiff argues that, although the ALJ noted the report from Dr. Gordon, a consultative examiner, the ALJ did not explain why he did not accept the examiner's report. In response, the Commissioner contends that Dr. Gordon is not a treating physician, and that as a consultative examiner, his opinion is not entitled to the controlling weight to which the opinion of a treating physician would be entitled. The Commissioner also argues that to the extent that Dr. Gordon's statement constitutes a medical opinion, the hearing decision shows that the ALJ fully reviewed and considered the report of Dr. Gordon's consultative evaluation.

11

In addition, Plaintiff argues that the ALJ's decision did not mention the evidence from Dr. Reddy, Plaintiff's treating physician.  In response, while conceding that the ALJ did not mention Dr. Reddy by name, the Commissioner argues that the ALJ discussed evidence, dated September 9, 2002 to November 28, 2002, from River Edge Behavioral Health Center, where Dr. Reddy worked.  (R. at 17, 167-242).  The Court disagrees and finds that the ALJ failed to specifically articulate what weight, if any, was given to both Dr. Gordon and Dr. Gordon's assessments of Plaintiff.

The law of this circuit is clear that the testimony of a treating physician must be given "substantial" or "considerable weight" unless "good cause" is shown to the contrary.  Johns v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987) (citing Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985)).  Although the opinion of a claimant's examining physician is accorded substantial weight, it is not necessarily dispositive on the issue of disability.  See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  The ALJ can reject a treating physician's report if it is not accompanied by objective medical evidence, is wholly conclusory, lacks persuasive weight, or when the evidence supports a contrary conclusion.  20 C.F.R. § 404.1527; Edward v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If, however, the ALJ gives less weight to the opinion of a treating physician, he must clearly

articulate the reasons for doing so, and the failure to articulate those reasons is reversible error.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Eleventh Circuit has further held that when the factfinder ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986).  The factfinder must give "explicit and adequate" reasons for rejecting the opinion of the treating physician.  <u>Elam v. R.R. Ret. Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991).  Failure of the ALJ to clearly articulate his reasons for not giving substantial weight to a treating physician's opinion that Plaintiff was disabled warrants remand.  <u>See</u> <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1390 (11th Cir. 1982) (holding that remand is required where reviewing court is unable to determine from the record whether ALJ properly considered treating physician's testimony).

Applying the law to the facts of this case, the Court is unable to conclude that substantial evidence  supports the ALJ's decision that Plaintiff is not disabled and that she maintains the residual functional capacity for medium work.  In the ALJ's decision, the ALJ referenced Dr. Gordon's and Dr. Reddy's diagnoses but did not provide a reason as to why he did not accept their findings.  Dr. Gordon's assessment indicated that there was a psychological reason to believe that Ms. Smith cannot hold and keep a simple

position in a stable work setting although this could change if she obtained treatment for her condition.  Dr. Gordon also found that Plaintiff could not deal appropriately with work stresses; her ability to relate predictably in social situations was impaired; her ability to interact appropriately with supervisors, co-workers, and the public was impaired; and, her ability to function in a forty hour week in a competitive environment was seriously limited and not an appropriate expectation.  The ALJ did not state what weight, if any, was given to this assessment.

In addition, the ALJ acknowledged that Plaintiff was seen on September 9, 2002, at a mental health center, and, he noted that on this date Plaintiff was diagnosed with schizoaffective disorder.  However, the ALJ did not indicate what weight, if  any, was given to Dr. Reddy's assessment that Plaintiff has a GAF score of 48 with the highest in the past year being 50 and his assessment that Plaintiff has chronic mental illness.  The ALJ failed to adequately discuss the opinions of the examining physicians, Dr. Gordon and Dr. Reddy  and the circumstances which contributed to his rejection of their opinions. Instead, the ALJ accepted the opinion of a non-examining physician, who only assessed a moderate limitation on Plaintiff's ability to maintain attention and concentration for extended periods of time.  The failure of the ALJ to either state with particularity the weight he gave the different medical opinions and the reasons therefore

14

is reversible error.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  Additionally, the Court finds that the ALJ erred by giving greater weight to the opinion of Dr. Ginn, a non-examining physician, and by not giving more weight to Dr. Gordon's and Dr. Reddy's opinions.[3]  The reports of reviewing, non-examining physicians do not constitute substantial evidence on which to base an administrative decision.  Spencer on Behalf of Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985); Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988) ("The opinions of non-examining, reviewing physicians, . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.").  Further, the good cause required before the treating physicians' opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician. Johns v. Bowen, 821 F.2d 551, 554 (11th Cir. 1987).  On remand, the ALJ should state the weight he accords each item of impairment evidence and the reasons for his decision to accept or reject that evidence.

---

[3]The Court does note that, even if the doctors opined that Plaintiff has a disabling impairment, the ultimate determination of whether a claimant is disabled is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e)(1).  However, the ALJ is required to state the weight given the doctor's opinions regarding Plaintiff's impairments and the reason these opinions were rejected.

AO 72A
(Rev.8/82)

**B.**    **Whether the ALJ failed to pose a complete hypothetical question to the VE.**

Plaintiff contends that the ALJ erred by failing to pose a complete hypothetical to the VE that included Plaintiff's inability to deal with stress and her limitations in social functioning. Plaintiff also argues that the ALJ omitted the limitations assessed by the non-examining consultant whose opinion he claims he accepted. In response, the Commissioner contends that the ALJ posed a proper hypothetical question to the VE. The Court disagrees with the Commissioner and finds that the ALJ failed to adequately pose a hypothetical that included all of Plaintiff's impairments.

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. See generally McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987). In order to constitute substantial evidence, testimony from a VE must be based on a properly phrased hypothetical question. Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999); Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). Such a hypothetical "should precisely set out the claimant's particular physical and mental impairments." House v. Shalala, 34 F.3d 691, 694 (8th Cir. 1994). The hypothetical need not use specific diagnostic terms, however, when other descriptive terms adequately describe the claimant's impairments.

16

See Roe, 92 F.3d at 676.  The hypothetical must be comprehensive, including all of a claimant's impairments, because social security benefits may still lie even though none of the impairments, considered individually, would be considered disabling.  Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

In this case, the ALJ based his determination of Plaintiff's RFC on a hypothetical posed to the VE that did not include the limitations assessed by Dr. Gordon, Dr. Reddy, or Dr. Ginn, the non-examining consulting physician.  Dr. Ginn,  on whose opinion the ALJ relied, indicated that Plaintiff would have moderate difficulties in maintaining social functioning and concentration, persistence and pace.  (R. at 258).  Neither the ALJ's RFC finding nor the hypothetical question included any limitation in social functioning.  Similarly, Dr. Gordon indicated that Plaintiff could not deal with work stresses, function independently, use judgment, or interact appropriately with others, and that her "ability to function in a 40 hour work week in a competitive environment is seriously limited and not an appropriate expectation. Her ability to adhere to a work schedule and meet production norms was impaired."  (R. at 132).  The VE testified that if the ability to deal with work stresses is impaired, it would impact the vocational base for the individual in question.  (R. at 309).  The ALJ made no findings regarding Plaintiff's ability to deal with stress.  The Court notes that the ALJ's questioning of the VE only determined that

17

if the individual's ability to deal with stress is poor, there is no work she can perform. "[I]t is the duty of the . . . [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." See 20 C.F.R. § 416.923.  Because the ALJ did not pose a hypothetical which included all of Plaintiff's impairments, having improperly rejected Dr. Gordon's and Reddy's assessments of Plaintiff, neither the Court nor the Commissioner knows whether the admissions or omissions of one or most of the limitations would cause the VE to offer the same or a different opinion as to Plaintiff's ability to work.  See Vega v. Comm'r of Social Sec., 265 F.3d 1214, 1220 (11th Cir. 2001)(finding that the Commissioner improperly relied upon the VE's responses to incomplete hypothetical questions and instructing the ALJ, on remand, to pose a more thorough hypothetical question to the VE).  On remand, the ALJ is instructed to pose a more thorough hypothetical to the VE.

>C. **Whether the ALJ erred in failing to properly weight lay witness testimony**.

Plaintiff argues that the ALJ should have stated what weight, if any, he gave Plaintiff's stepfather's testimony.  In response, the Government contends that the ALJ's finding regarding Plaintiff's credibility was an implicit finding regarding the lay witness,

Mr. Gilstrap.  The Court disagrees with the Commissioner.

The ALJ rejected Plaintiff's credibility based on, among other things, Plaintiff's failure to seek treatment consistently, because of her ability to maintain her home, and focus on her goal of obtaining a disability check.  (R. at 18).  The ALJ also stated that Plaintiff's actions were "simply not indicative of an individual who is schizophrenic and actively hallucinating as alleged by claimant."  (R. at 18).  The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony do not implicitly reject Mr. Gilstrap's testimony.   Mr. Gilstrap testified that although he was Plaintiff's stepfather, he raised Plaintiff and had been involved in her life since she was nine years old.  (R. at 297).  Mr. Gilstrap said that in school Plaintiff  had been "wild" and "suspicious".  (R. at 297).  Mr. Gilstrap testified that it had been recommended that Plaintiff be placed in "a special school" when she was in grade school, but that he had refused.  (R. at 297-98).  Mr. Gilstrap also stated that he has heard her speaking to the voices she hears and that she has extreme mood swings and inappropriate behavior.  (R. at 298).  Mr. Gilstrap also testified about Plaintiff's drug usage, her having disappeared for days, her very low self-esteem, and Plaintiff's failure to score well enough on testing to get into trade school.  (R. at 299).

19

As a parent, Mr. Gilstrap's testimony is an important source of information, because he was in a position to observe Plaintiff and provide the ALJ with a longitudinal view of Plaintiff's mental history and her erratic behavior.  Furthermore, Mr. Gilstrap's observations lend significant support to other evidence in the record, including Dr. Gordon's assessment.  Accordingly, the ALJ should have stated the weight he accorded Mr. Gilstrap's  testimony.  See Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990)(reversing a case, in part, because the ALJ failed to review the lay testimony or give any reasons for rejecting this testimony).  Because the ALJ did not mention Mr. Gilstrap's testimony, the Court is unable to determine whether or not the ALJ considered this important evidence.  The ALJ must "sufficiently articulate his assessment of the evidence to 'assure  us that the ALJ considered the important evidence ... and to enable [the Court] to trace the path of the ALJ's reasoning.'"  Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)).  The ALJ may not substitute his own judgment for medical findings.  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir.1996) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings.").  On remand, the ALJ is directed to specifically evaluate the testimony of Mr. Gilstrap.

20

## <u>CONCLUSION</u>

For the reasons stated above, this case is hereby **REVERSED AND REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED** this <u>30th</u> day of August, 2007.

<u>s/Linda T. Walker</u>
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE